120-0900-WC Altria Group Appellant by Matthew Kuczynski v. Illinois Workers' Compensation Commission, Almedo Bernal, Appley by Brian O'Connor. Mr. Kuczynski, would you like to proceed? I would, your honor. Thank you. Good afternoon, your honors and counsel. May it please the court, my name is Matthew Kuczynski of Kachilla Law Group and I represent the appellant. Let me interrupt you one minute, sorry, and we won't detract from your time. I forgot to announce that Justice John DeParis is not present on the remote oral argument today. He had a conflict and was unable to be here this afternoon, but he is a fully participating member of this court on this case. He has the benefits of the written briefs you've submitted and filed, and also he'll have the benefit of listening to and watching this oral argument. So with that said for the record, Mr. Kuczynski, please proceed. Thank you, your honor, and I appreciate that. Your honors, today you will hear the word credibility used extensively. Mr. Kuczynski, before you get to the merits of the arguments that you raise on appeal, I have a question. Yes, your honor. When this case went before the arbitrator on a 19B, what were you requesting? Your honor, I believe that the request from the petitioner was they were seeking approval for prospective medical treatment that consisted of surgeries to the petitioner's right wrist. Were they also seeking payment for medical expenses already incurred? Yes, your honor. All right, now we got to look at the commission's decision, and the commission's decision says the respondent shall pay the necessary medical expenses incurred to treat the matter back to the arbitrator to determine, amongst other issues, there was no TTD and prospective medical care is prospective, but they also remanded it back to the arbitrator, did they not, to assess the medical expenses that were owed? Yeah, yes, your honor, that is correct is my understanding. Then where's the finality of the decision that gave the circuit court jurisdiction here in this case? Your honor, I believe the finality would be finding that there was in fact an accident and therefore the respondent would be legally required under the act to pay those medical expenses. But it's not a final determination by the commission, and although they use the word it's remanded pursuant to Thomas, it's not a Thomas remand. A Thomas remand is for matters that incur after the arbitration increase TTD, prospective medical, all sorts of expenses, but it doesn't take into consideration matters that were incurred before the arbitration that were the subject of the arbitration. And it occurs to me that deprives the commission's decision of the finality necessary to permit an appeal. Your honor, what I would stress is again, the appellant is here today to hopefully demonstrate to this court that the decision that an accident did occur was made against the manifest weight of the evidence. Counsel, you can't waive jurisdiction. I understand your honor, we don't waive any jurisdiction or arguments at all. Our understanding today is that it was a final determination as to that issue. What issue? The issue that an accident related accident occurred and then therefore the respondent would be required to pay medical expenses to the respondent. Specifically to authorize the surgery, the prospective surgery that the commission decision also required the respondent to authorize. But the whole thing has to be final, not parts of it. So if the entire decision is not final, then the decision is not subject to appeal. And the cases are pretty clear that if on remand, there is any requirement for further administrative proceedings that occur prior to the arbitration, the decision in arbitration that you don't have a final order and the circuit court has no jurisdiction to hear the case. And if the circuit court doesn't have any jurisdiction to hear the case, we have an obligation then to vacate the order. So it's a jurisdictional problem I'm having, but go ahead. If you, if, if that's your response, go ahead. Uh, yeah, I, I, your honor, thank you. And I believe a, uh, appellant will just say, um, for the record, we waive no jurisdictional defenses in this matter. Um, and I will proceed onto the merits. And I thank you again, your honor. It wouldn't be a defense in this matter. It would actually in or against your benefit because we would vacate what the circuit court did, but go ahead. Thank you, your honor. Your honors today, you will hear the word credibility used extensively. And that's because the fact of this case, make one question paramount. Did the commission have sufficient evidence to evaluate the credibility of the petitioner differently than arbitrator Soto? And I say that today because all relevant issues we will discuss are going to lead back to this fundamental question predicated on the unique factual circumstances presented to this court in regard to the testimony supporting causation, as well as the documentary evidence and testimony supporting accident having occurred. Now your honors briefly in the underlying workers' compensation action, after hearing all testimony and carefully reviewing all evidence arbitrator Soto correctly determined that the petitioner did sustain his burden to prove an accident, that petitioner did sustain his burden to prove that there is a causal relation between his current state of ill being and that accident. And therefore the respondent is, I'm sorry, therefore the petitioner is entitled. I'm sorry. Sorry. The petitioner is not entitled to future medical benefits from the respondent. Crucially. And so holding your honor arbitrator Soto found that petitioner's testimony regarding symptomology was not credible. He found that the uncredibility of the petitioner similarly tainted the opinion of his treating physician, Dr. Tulipan. Dr. Tulipan explicitly tied those opinions to the petitioner's self-reported change in symptomology. The commission thereafter reversed the arbitration decision, finding that the petitioner did sustain his burden to prove that an accident occurred. Further, that the respondent is responsible for future related medical expenses, including the surgery discussed in the underlying arbitration. To so find it reversed the arbitrator's credibility findings in regard to petitioner's Dr. Tulipan. The circuit court thereafter affirmed the commission's findings and reversals. And it is here we find our errors. The commission's threadbare explanation for the credibility reversals flies in the face of the evidence in the record. In this case, such an error cannot stand. If this course agrees with arbitrator Soto and the appellants that the testimony of the petitioner presents an incongruous account of previous post-accident symptomology, when sufficient evidence in this case to support the commission's reversal of the credibility findings or its findings on accident and causation, your honors. Turning to the crucial importance of the credibility here in this factual situation, the determination of whether a work-related accident occurred here revolves almost exclusively around petitioner's pre-accident versus post-accident symptomology attributable to his right wrist. It revolves around that question for the following reasons. He was the sole witness to the accident. He suffered from severe pre-existing conditions that were symptomatic near in time to the date of injury. Petitioner previously underwent three surgeries to his right wrist, two of which were treating pre-existing conditions in that right wrist. And finally, Dr. Tulipan explicitly tied his causation opinions to petitioner's reported pre-versus post-accident symptomology. Therefore, we must turn to the testimony of the petitioner, the testimonies of Dr. Carroll and Dr. Tulipan, and the medical record and evidence to determine that pre-versus post-accident symptomology. And the importance of the credibility of the petitioner in that is, of course, self-evident. As the sole witness of the alleged accident and the individual best suited to describe his symptomology, the determination of his credibility carries heavy weight as to whether an accident did in fact occur as alleged. And further, that his current condition of ill-being can be attributed to that accident via change in his symptomology. However, its importance is even greater in this case here, where the commission relies upon a medical causation opinion that explicitly tied itself to the credibility of the petitioner in regard to his self-reported change in symptomology, as testified to by Dr. Tulipan. The result, your honors, is a case that unravels if the petitioner is indeed uncredible. And the petitioner is indeed uncredible here. Petitioner's testimony was not consistent with a crucial piece of evidence in the record, your honors, the only pre-accident medical record and evidence from which we can objectively gauge pre-accident symptomology. It is not consistent with the testimony. And this uncredibility in turn renders Dr. Tulipan's opinions uncredible and unreliable as well, particularly when petitioner's testimony is directly at odds with the testimony of Dr. Tulipan, as was the case at trial. Now, your honors, I'd like to point out that appellate does not contend that the commission is bound by the credibility findings of the arbitrator. However, when the commission's credibility findings are adverse to those of the arbitrator, the court is faced with the obligation of determining whether the commission's credibility findings, which are contrary to those of the arbitrator, are against the manifest weight of the evidence. And further, a resolution of that question can only rest upon the reasons given by the commission for the variance. And your honors, the commission's reversals in this case, as the credibility findings were clearly made against the manifest weight of the evidence as they pertain to the petitioner. Petitioners, the commission predicated this reversal on a summary statement, which is that petitioner's testimony was internally consistent and consistent with the medical record. Your honors, this is clearly not the case in the record. His testimony is inconsistent with the only medical record and evidence from which we can verify pre-accident symptomology, which we have discussed. Further, when he was asked about pre-accident symptomology and or the pre-accident Dr. Tulipan office visit, petitioner denied multiple times that he was symptomatic on that date of that visit. But we do know he was symptomatic on that date because Dr. Tulipan recorded it in his notes. Further, Dr. Tulipan testified as to such in his deposition. Finally, appellee's brief concedes that he was symptomatic on that date. It therefore seems to appellate that only here the petitioner disagrees via his testimony that he was symptomatic on that date. Appellee attempts to rehabilitate this testimony and appeal, but appellant contends that appellee's brief does not do so. A simple review of the transcript reveals that it does not. Petitioner was asked twice if he reported issues that Dr. Tulipan denied. He was asked if he had pain in the year before the accident, and he denied despite the fact that we know he was reporting continued discomfort and dysfunction. And very importantly, your honors, we know via that record that he was actually modifying his tool use at work because of his pain predicated on that record. And yet he's apparently not symptomatic on that date or was normal for his testimony. Finally, your honor, there is simply not enough. There is not sufficient evidence in the record to rehabilitate petitioner's testimony on this issue, as the commissioner seems to have found. It is appellant's contention that this in and of itself, that credibility reversal, that finding without sufficient evidence to do so is reversible error in this case. But compounding that issue is the uncredibility petitioner then taints all the other findings in this case. Because given the uncredible nature of his testimony, there is no competent evidence in the record to deem that an accident occurred from which the commission could have found such a finding. Counsel, the arbitrator found that the claimant's testimony was not credible. Yes, your honor, that is correct. The commission reversed. Yes, your honor. The commission judged his credibility differently as the wording they use. Yes. Can't they do that? Yes, your honor. The commission is allowed to do that. However, appellant's position is that there must be sufficient evidence in the record to support a credibility reversal such as that. And in this case, there is none. As such, that credibility findings reversal was made against the manifest weight of the evidence and is in of itself reversible error. Moving back to accident, your honors, we have no competent report of accident, either testimony or documentary evidence. I will briefly go through each in documentary evidence. The appellee points to report created the day of the accident accident reportedly. Appellant would note that that report is a self-reported statement made by the petitioner. It's not signed by a medical professional. I'd also like to briefly touch on the TFCC stare. Which is discussed by the commission and justifying the reversal. But there is no medical testimony in this case, showing that a tear was not objectively present as the commission states. That seems to be just a theory that makes little sense to the appellant, given the medical evidence before us. And finally, they point to a change in symptomology to allege that there was a sudden and abrupt flare up in his condition. And that this is therefore clearly attributable to some kind of work accident. However, we point out that there's no medical testimony in this case, underpinning that Dr. Tulipan explicitly predicated his opinions based on what petitioner was telling him in regards to reported symptomology, not objective findings at those visits. In summation, your honors, there is not sufficient evidence in the record demonstrating that petitioner suffered at an accident arising out of the course of his employment with a respondent. Finally, your honors, turning to the testimony, the causation testimony as to the current condition of ill being, that also is completely tainted by the uncredibility of petitioner. And that's because as I have discussed at length, because it's so important, Dr. Tulipan twice in his deposition explicitly notes that he is explicitly tying his causation opinions and why the rheumatoid arthritis could not account for all the conditions present because of what the petitioner was reporting to him in regard to self-reported symptomology. And if your honors agree with the appellant and the arbitrator that the petitioner is uncredible based on his testimony, then clearly we have an issue as well with Dr. Tulipan's causation testimony, which specifically is predicated on the same. In short, your honors, Dr. Tulipan essentially concedes that his causation opinion is hinged on the credibility of an uncredible petitioner. In contrast, Dr. Carroll's opinions do not rely on such an uncredible basis. Dr. Carroll's opinions adequately explain the continued symptomology. Dr. Carroll's opinions do not rely on an uncredible petitioner's- Your time is up, Mr.- Thank you, your honors. I thank you for your time. It's not uncredible, it's incredible. Thank you, your honor. Okay, thank you. You'll have time and reply. Mr. O'Connor, you may respond. I may please the court, your honors. Brian O'Connor for the appellee, Olmeda Bernal. To address Justice Hoffman on the jurisdiction, I have to admit I didn't give it that much thought in the decision on the last page by the commission. It stated that the case be remanded to the arbitrator for further proceedings consistent with this decision, but only after implying that the case had to go, if it was going to be addressed, and if the case was going to be appealed on the decision as to accident and causal connection, it was going to go to the court, circuit court, and then ultimately to your honors if they proceeded that far. I'm no expert in this, to be frank. Mr. O'Connor, I would suggest you read Supreme Catering versus the Illinois Workers' Compensation Commission. In that particular case, we decided that because the commission uses the magic words of remanded pursuant to Thomas and not until certain things are done, that that doesn't give a carte blanche to review non-final orders. And if the order truly is a non-final order by the commission, then in that particular case, the circuit court had no jurisdiction to hear this case. And the one issue that's problematic is the medical expenses, because medical expenses were sought by this petitioner before the arbitrator. The arbitrator denied all benefits. It went back up to the commission, and the commission had some interesting things to say about this. The commission turned around, of course, reversed the arbitrator, and found that it was out of it in the course of there was no TTD to be awarded before the arbitrator because he hadn't missed any work. And prospective medical is something that hadn't happened yet. But the commission entered an order ordering that the respondent pay all reasonable medical expenses incurred by the petitioner pursuant to the schedule, and then remanded it to the for an award of medical expenses. The commission never calculated the medical expenses. And if it's been returned to the arbitrator for administrative determination, it's not a final order. And that's what supreme catering says. And we have what else? Service drywall says the same thing. In both of those cases, it was remanded for a determination of whether he was actually entitled to voc rehab. But in both of them, they say the same thing. If it's been remanded to the arbitrator for the performance of any administrative matter other than strictly under Thomas, then in that particular case, you got a nonfinal order. I follow your honor's analysis, Justice Hoffman. The only thing I all I'm going to argue about that is that just as a matter of judicial resource use, the issue is this guy needed a surgery. And that's the real issue here. And the court ruled that he should get it essential or the commission rather ruled that he should get it prospectively. And but as I said, I didn't I read that one paragraph, your honor, and I never addressed the issue of jurisdiction again. So let me if I could, can I just address briefly this credibility? Go ahead. Go ahead. Thank you. I mean, to be honest with you, there there is absolutely no evidence that there wasn't an accident in May of 2014. As your honors know from doing many workers camp cases are individual employee petitioner alone is testifying to it. What counsel just said, there is a report and it's got the nurses handwriting and their gene Krupa that says virtually identical as to what the petitioner testified to. The commission found his testimony internally consistent, which makes total sense. He gave a detailed explanation of what happened. The whole thing boils down to a prior visit with Dr. Council had mentioned that's completely distorted in the by by the appellant in this case. And quite frankly, it's sort of amazing considering they trusted the same employee when they were pulling their plan out of Franklin Park and taking all their jobs down to Tennessee. They send the petitioner Bernal down there to reinstall his own install all these machines. But on the record, it's very simple. Dr. Tulipan admits that that evaluation in February was for his pending workers camp case that he was handling pro se. Dr. Tulipan says, quote, he's doing well, working full time has intermittent pain with heavy use. Later on in his deposition, Dr. Tulipan used the words that he was minimally symptomatic. That's all it was. And for account for the appellate to take a few words out of this man's testimony where he says, I'm normal, I'm doing fine. That is not inconsistent with with Dr. Tulipan's record. And even if it was the medical evidence complete, totally supports the finding of the commission here. Dr. Tulipan's pre-injury visit shows A, no swelling, B, full range of motion, C, grip strength at 54 pounds. Immediately after the accident, he goes to Tulipan a few days later. He now has restricted motion. He now has swelling. He now has persistent pain. None of those symptoms were present before. He didn't measure the grip strength then, but the IME doctor did a few months later, and it was down to 12 or 15 pounds, some 300 percent reduction. So this issue about credibility is quite frankly, utter nonsense. There was no issue of credibility. And I quoted one thing in the brief where the arbitrator said one of his bases for saying that Bernal had no credibility was that he didn't, quote, report immediate pain or any change in condition. And what does that mean? He did report immediate pain. It's right in the nurse's report, and it's right in Dr. Tulipan's report, or records rather. And Tulipan's records support the dramatic change as well as the IME doctor. And the law is obviously on our side here. The Caterpillar tractor case dealt with rheumatoid arthritis, which by the way, was never diagnosed with Bernal before, but apparently has. Nobody's disputing that. But that is not the sole cause of this man's condition of ill-being, as is demonstrated in the record. The MRI showed three things, a TFCC tear, osteoarthritis, which was from his longstanding prior injuries, and then rheumatoid arthritis. So yes, the rheumatoid arthritis is not caused by this. But as Dr. Tulipan said, he was minimally symptomatic before by his own history, but also by the objective findings by all the doctors, including the IME doctor. So the evidence is just overwhelming and cause of connection. This case has been going on for years, just so this now terminated employee, because they moved the jabs down to Tennessee, is trying to get a surgery. What else can I say? It's the commission's job to resolve conflicting opinions, as we all know, and they did it here. The Thiel case that counsel cites in his brief supports affirming the average trader's award, affirming the commission, excuse me, because all the commission, if they have a reasonable explanation and an analysis and some evidence to support their decision, that's it. That's within the province of the commission. Even if this court thought, well, maybe that wasn't exactly the right decision. So I respect, I understand the court's concern about jurisdiction. Um, all I can say is what I said already on that, but in terms of the basis for this particular appeal, there is no basis to say that the commission's decision was against the manifest way to the evidence. Okay. Thank you, Mr. O'Connor. Mr. Kuczynski, uh, reply. Thank you, your honor. I do have some brief replies here. I'd like to start with again, reiterating that appellant fully understands and agrees that it is within the province of the commission to judge credibility. However, we believe an accurate and fair reading of Thiel shows that when they make credibility reversals, um, and they give reasons for it, then it's a manifest way to the evidence analysis. Was that finding, is there evidence to support that finding? And your honors, I think that's reasonable. If we think about it, would it be acceptable for the commission to write on a decision that we reversed the credibility findings because we wanted to, or we felt that way? Of course not. There has to be some kind of evidentiary basis here. And I think that's a completely, uh, a completely appropriate avenue of judicial review. Uh, just moving back onto the credibility, I would say that there, I wouldn't say that there's evidence and accident didn't occur, but there's evidence that explains petitioner symptomology that does not involve a work-related accident. Um, and any incredible, incredible testimony testified to is the same, uh, specifically your honor, your honors. Um, we had, we know he suffered from severe pre-existing conditions and we also know that he was then diagnosed with non-work-related rheumatoid arthritis. We know that those both account for his symptomology, both pre-accident and the continued increasing symptomology after as that rheumatoid arthritis, uh, flared up per, uh, Dr. Carroll's testimony. Um, and this, your honors, this is why credibility is so key to this case because we do have alternative explanations and therefore we need to determine petitioner's credibility to determine what has the best evidentiary support here. And as I alluded to earlier, that's compounded in this case when you then have a credibility reversal that has no supporting evidence. So it's kind of issues within issues here, uh, which I hope I've helped elaborate in my briefs in this oral argument. The final note I would address here is regard the work note, the, uh, the document reportedly created the day of the accident. Um, I'd also just like to state that appellant absolutely agrees that a record was created on that date. He absolutely did see the Altria work nurse, um, but we would push back on the characterization of that record. And I believe your honors, um, as you can see in my reply brief, I discussed it as well as I believe in my original brief as well. That's not a record of medical treatment. The work nurse is, he's saying, this is what happened to me. I know work nurse says, okay, write it all down or maybe she might write it on for him. And then he signs it. The nurse, the work nurse is not independently corroborating or verifying his reports of symptomology there. She's just reiterating what he's saying. And as you'll see also included with that is an explanation that it's for the purposes of workers' compensation and investigation. It's not a medical record. Um, with that, your honors, I appreciate you all for your time. Thank you so much. And appellant rest. Thank you. Okay. Thank you. Counsel. Thank you. Counsel both for your arguments in this matter. This afternoon, it will be taken under advisement and a written disposition shall issue. Uh, the clerk of our court will ask.